# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| PACIFIC NW LAND, LLC, a Washington limited liability company,<br><br>Respondent,<br><br>v.<br><br>SHEILA SWAN, and any other persons residing at, occupying or claiming any interest in, 212 N. 33rd Court, Ridgefield, WA 98642,<br><br>Appellant. | No. 61250-0-II<br><br><br><br>UNPUBLISHED OPINION |

LEE, J. — In this unlawful detainer action, Sheila Swan appeals the superior court's order for a writ of restitution in favor of Pacific NW Land, LLC (Pacific NW Land) and an order denying Swan's motion for reconsideration. Swan argues that based on the timing of when she made a complaint regarding smoke detectors in her unit and when Pacific NW Land issued a "14-Day Notice to Pay Rent or Vacate the Premises" (14-Day Notice) to her, she established a rebuttable presumption of retaliation, creating an issue of material fact and was, therefore, entitled to a trial.

Pacific NW Land had already properly served Swan with notice of a rent increase and Swan was in arrears on her rent when Pacific NW Land issued the 14-Day Notice before Swan made the smoke detector complaint. Therefore, under RCW 59.18.250, a presumption arises that Pacific NW Land's action was not retaliatory. Because there is no evidence of retaliation in the record to rebut the presumption and there is no issue of material fact, the superior court did not err when it

entered an order for a writ of restitution in favor of Pacific NW Land and when it denied Swan's motion for reconsideration. Accordingly, we affirm.

FACTS

A. BACKGROUND

1. Tenancy

Swan was a longtime tenant in a rental unit owned by Pacific NW Land. In September 2021, Swan renewed her lease with Pacific NW Land for the rental period of November 1, 2021, through August 31, 2022. Swan's monthly rent was $1,950. The lease provided that rental payments were due the first day of each month, and if rent had not been received by midnight on the fifth day of the month, Pacific NW Land would assess a $100 late fee. When Swan's lease expired in August 2022, Pacific NW Land did not offer her another fixed-term lease. Swan was then treated as a month-to-month tenant.

Pacific NW Land required all tenants to pay rent through its online tenant portal, called "AppFolio." Verbatim Rep. of Proc. (VRP) (Apr. 8, 2025) at 36. The tenant portal would link with a tenant's email address and phone number. Tenant portals would document every communication a tenant had with Pacific NW Land, as well as rent payments and history. Additionally, the tenant portal would show what tenants owed each month for rent and send monthly email reminders reflecting new charges posted or the rent owed. In Swan's portal, Swan had elected to have payment reminders sent to her email address, and she had linked both a bank account and credit card to her portal account.

Between January 2018 and April 2023, Swan generally made rental payments electronically via ACH.[1] Swan often made rental payments late and incurred late fees; on one occasion, one of Swan's rental payments was returned for insufficient funds. After April 2023, Swan began making rental payments via check. Despite Pacific NW Land's policy that tenants use the online tenant portal for rental payments, it accepted Swan's physical checks.

In February 2022, Swan applied for rental payment assistance through the State. The State limited requests to 12 months of rent assistance; Swan requested assistance for the months of October 2021 through June 2022, and her request was granted. Based on the rental assistance contract, Pacific NW Land, as the landlord, also had to accept certain terms, including to not assess new late fees for the months the rental assistance covered, to not increase Swan's rent for at least six months, and

> to not terminate or refuse to renew [Swan]'s tenancy until after six months unless: (a) a household member materially violates the terms of the lease; (b) a household member is creating a significant and immediate risk to the health, safety, or property of others; or (c) at least 90 days' written termination notice is provided to the household based on the Landlord[']s intent to (i) personally occupy the premises as a primary residence, or (ii) sell the property.

Clerk's Papers (CP) at 82 (underlining omitted). Pacific NW Land signed the rental assistance contract on June 1, 2022.

Swan did not use her tenant portal to communicate with Pacific NW Land; instead, she directly emailed the owners of Pacific NW Land or its attorney, Albert Schlotfeldt, despite requests

---

[1] ACH, or automated clearing house, is a type of electronic money transfer from one bank to another. Lorraine Roberte, *Understanding ACH Transfers: How They Work*, INVESTOPEDIA (Mar. 25, 2026), https://www.investopedia.com/ach-transfers-what-are-they-and-how-do-they-work-4590120.

that she use the tenant portal. In June 2024, Swan emailed Schlotfeldt, claiming she was denied access to her tenant portal and that she had not had access to her portal for months. According to Pacific NW Land, Swan always had access and never lost access to the tenant portal, and she had messaged Pacific NW Land through the portal.

On August 1, 2024, Pacific NW Land notified Swan that beginning October 1, 2024, Swan's rent was going to increase by $545 to $2,495 per month. Pacific NW Land mailed a copy of the rent increase notice to Swan via first-class mail and posted the notice on Swan's front door. The increased rent was also reflected in Swan's tenant portal through which she received email reminders.

However, once the new rent increase took effect, Swan continued to pay $1,950 in rent each month and failed to pay outstanding late fees. In October 2024, Pacific NW Land sent Swan a text message from the portal reminding Swan of rent due. Swan replied to the message stating that she had mailed a check and then blocked Pacific NW Land from messaging her further.

On November 21, 2024, Swan filed a complaint with the City of Ridgefield Code Enforcement, claiming that Pacific NW Land had failed to replace expired smoke detectors in her unit and that the smoke detectors had begun to chirp incessantly. According to Swan, she requested new smoke detectors from Pacific NW Land in August 2024 but never received a response. According to Pacific NW Land, it had attempted to replace the smoke detectors in August and October of 2024, but Swan had refused entry to the maintenance workers, which resulted in the expiration of the smoke detectors.

Pacific NW Land became aware of Swan's code enforcement complaint in late November 2024, when Swan emailed Schlotfeldt about the issue. On November 28, Pacific NW Land

4

emailed Swan, informing Swan that it would send a maintenance worker on November 30 to replace the smoke detectors. Swan did not respond.

Swan refused entry to the maintenance worker and insisted the worker drop off the smoke detectors for her to install herself. Pacific NW Land did so, but Swan then discovered she could not install the smoke detectors on her own.

On December 13, Swan emailed Schlotfeldt, stating that she had received an email from Pacific NW Land from a "no-reply" email address she had never seen before, that all prior communication with Pacific NW Land had been through an email address to which she could reply, and that she still did not have access to the tenant portal. CP at 270. Swan requested all her communications with Pacific NW Land occur through Schlotfeldt "to prevent any difficulties." CP at 270.

On December 19, Swan emailed Ridgefield Code Enforcement again to "restat[e]" her complaint regarding "housing code violations" for Pacific NW Land's failure to replace the expired smoke detectors. CP at 140. Pacific NW Land sent another maintenance worker to Swan's unit, and Swan again refused entry, saying "it wasn't a good time for her." VRP (Apr. 8, 2025) at 40. Then on December 30, Swan allowed a maintenance worker to install new smoke detectors.

2. Notice to Pay Rent or Vacate

On December 14, Pacific NW Land posted the 14-Day Notice on Swan's door. Pacific NW Land also mailed a copy of the notice to Swan via first-class mail.

On December 18, Swan emailed Schlotfeldt regarding the 14-Day Notice. Swan acknowledged receipt of the notice on December 14 and stated, in relevant part:

> I haven't received a lease agreement with rent increase. A 60 day rent increase notice must be provided anytime there is a rental increase.
>
> I have not changed my email address and have not received any communication regarding lease agreement/rent increase. PNW Land was notified years ago that my choice of communication is via email.

CP at 269. Swan claimed the notice was an "unlawful detainer action" by Pacific NW Land since it occurred after she filed her smoke detector complaint with the Ridgefield Code Enforcement. CP at 269.

On December 26, Swan emailed Schlotfeldt regarding the mailed copy of the 14-Day Notice, which she had received on December 18. Swan again claimed she was never notified of a rent increase and that Pacific NW Land was retaliating against her for submitting the complaint regarding the smoke detectors. Swan also wrote:

> [Pacific NW Land] continue[s] to refuse my access to the tenant portal. I am current with all rent payments and no late payments per RCW laws. This is a cease and desist warning to your clients to stop their unlawful 14 day pay or vacate or any other type of unlawful eviction detainer actions. There is no cause for these notices!

CP at 202.

Then, on December 30, Swan emailed Schlotfeldt, in an apparent reply to a prior email.[2]

> Another lie Albert, I do not and have not had access to the PNW Land tenant portal for years. . . . As I have already informed you, I will accept all communications from your clients by you, their attorney since 2022. I never received any such email notification from the Folio app.

CP at 275 (underlining omitted). Swan emailed Schlotfeldt again on December 31, claiming retaliation and that she was entitled to a "120 day written email notice of a $545/mo. rent increase." CP at 139.

---

[2] The email Swan appears to reply to is not included in the appellate record.

B.      UNLAWFUL DETAINER ACTION

On January 13, 2025, Pacific NW Land filed an eviction summons, unlawful detainer complaint, and motion for an order to show cause against Swan. The complaint alleged that Swan failed to pay full rent for the months of October through December 2024 and January 2025, and that Swan failed to pay late fees for those same months. Pacific NW Land alleged that Swan owed at least $3,180 and that she had failed to comply with the 14-Day Notice. Pacific NW Land requested a writ of restitution, among other damages, and for the court to restore the premises to its possession.

In Swan's answer to the complaint, Swan claimed that she never received notice of the rent increase and that she was current with all rent payments. Swan further alleged that Pacific NW Land was retaliating against her for her smoke detector complaint. In a declaration, Swan stated that Pacific NW Land made false claims that it had mailed her notice of the rent increase in August 2024. However, Swan then stated that "if [Pacific NW Land] did attempt to mail a notice it could have been stolen" based on recent mailbox break-ins. CP at 127. Swan also stated that because of those break-ins, she "no longer use[d] the cluster mailbox[es] for safety purposes." CP at 127-28.

In April 2025,[3] the superior court held a show cause hearing pursuant to RCW 59.18.370.[4] The superior court acknowledged receipt of the parties' filings and declarations prior to the hearing

---

[3] Between January and April, Swan and Pacific NW Land filed various motions that are not pertinent to the issues on appeal.

[4] RCW 59.18.370 provides in part:

and identified the points of disagreement—namely that Swan alleged she never received notice of the rent increase and that Pacific NW Land retaliated against her for the smoke detector complaint.

The superior court allowed Swan to argue first. Swan argued that the only notification she received was the 14-Day Notice and that the documents Pacific NW Land submitted with its declarations were "false." VRP (Apr. 8, 2025) at 20.

Pacific NW Land presented testimony from its property manager, Andrea Ball. Ball testified to the facts described above. Ball also testified that Swan's failure to pay full rent pre-dated Swan's smoke detector complaint and that Pacific NW Land's decision to issue the 14-Day Notice was not at all related to Swan's complaint. Ball further testified that even if Swan had not received notice of the rent increase in August 2024, Swan would have received an email reminder regarding the rent that needed to be paid with the exact amount. Additionally, Ball stated that no other tenants complained they had not received any notices of rent increases. Through Ball, Pacific NW Land introduced various documents, including the August 1, 2024 rent increase notice, the 14-Day Notice, and Swan's tenant ledger and payment history.

Throughout the hearing, Swan interrupted and argued with the superior court, claiming that the tenant portal reflected inaccurate information regarding her rent payments, that she never communicated through the portal with Pacific NW Land, and that Washington law allows rental payments to occur five days past the due date without being considered late.

---

The plaintiff, at the time of commencing an action of forcible entry or detainer or unlawful detainer, or at any time afterwards, upon filing the complaint, may apply to the superior court in which the action is pending for an order directing the defendant to appear and show cause . . . why a writ of restitution should not issue restoring to the plaintiff possession of the property in the complaint described.

In an oral ruling, the superior court found that Swan had a month-to-month tenancy and that based on email and text communications with Pacific NW Land, Swan was aware of the rent increase and that she was consistently late with rental payments. The superior court also found Pacific NW Land to be more credible based on the evidence submitted of Swan's and Pacific NW Land's communications. Accordingly, the superior court held that Swan did "not have a proper defense to this writ of restitution." VRP (Apr. 8, 2025) at 61. The superior court entered an order for a writ of restitution restoring the premises to Pacific NW Land and issued the writ.

Swan filed a motion for reconsideration, which the superior court denied.

Swan appeals.

ANALYSIS

On appeal, Swan argues that based on the timing of her smoke detector complaint to the Ridgefield Code Enforcement and Pacific NW Land's issuance of the 14-Day Notice, she established a rebuttable presumption of retaliation from Pacific NW Land, which creates a genuine issue of material fact. Therefore, Swan asserts, the matter should have proceeded to trial and the superior court erred when it entered a writ of restitution and "final judgment" in favor of Pacific NW Land. Br. of Appellant at 17. We disagree.

A.      UNLAWFUL DETAINER ACTIONS

Unlawful detainer actions are governed by the Residential Landlord-Tenant Act (RLTA), chapter 59.18 RCW, and Washington's "generalized unlawful detainer statutes," chapter 59.12 RCW. *Randy Reynolds & Assocs., Inc. v. Harmon*, 193 Wn.2d 143, 156, 437 P.3d 677 (2019); *Garrand v. Cornett*, 31 Wn. App. 2d 428, 437, 550 P.3d 64 (2024). These actions are summary

9

proceedings that offer "an expedited means to resolve competing claims of possession between landlords and tenants." *Garrand*, 31 Wn. App. 2d at 437.

"The scope of the proceedings is 'narrow' and 'limited to the question of possession and related issues such as restitution of the premises and rent.'" *Egbert v. Jorgensen*, 36 Wn. App. 2d 1, 20, 580 P.3d 1002 (2025) (quoting *Munden v. Hazelrigg*, 105 Wn.2d 39, 45, 711 P.2d 295 (1985)). The RLTA and generalized unlawful detainer statutes are strictly construed in favor of the tenant. *Garrand*, 31 Wn. App. 2d at 437.

Landlords are limited on the grounds upon which they may evict a tenant. RCW 59.18.650(1)(a); *Egbert*, 36 Wn. App. 2d at 20. One of the grounds for eviction includes when

> [t]he tenant continues in possession in person . . . after a default in the payment of rent, and after written notice requiring, in the alternative, the payment of the rent or the surrender of the detained premises has remained uncomplied with for the period set forth in RCW 59.12.030(3) for tenants subject to this chapter. The written notice may be served at any time after the rent becomes due.

RCW 59.18.650(2)(a); *see also* RCW 59.12.030(3).

Written notice must be served in accordance with RCW 59.12.040 and "[i]dentify the facts and circumstances known and available to the landlord at the time of the issuance of the notice that support the cause . . . with enough specificity so as to enable the tenant to respond and prepare a defense to any incidents alleged." RCW 59.18.650(6).

If a tenant fails to comply with a written notice of a default in the payment of rent, he or she may be liable for unlawful detainer. RCW 59.12.030(3). A landlord may file an unlawful detainer action and move for a writ of restitution. *Randy Reynolds & Assocs.*, 193 Wn.2d at 156-57; *see generally* RCW 59.18.365, .370, .380.

"A 'writ of restitution' is a legal remedy, ordered by the superior court and issued by the clerk's office, that allows the landlord to regain immediate possession of the property pending the court's issuance of a final judgment." *Egbert*, 36 Wn. App. 2d at 21-22. Before a landlord can obtain a writ of restitution, the landlord must move for a show cause hearing. *Garrand*, 31 Wn. App. 2d at 438; RCW 59.18.370.

During a show cause hearing, "[t]he court shall examine the parties and witnesses orally to ascertain the merits of the complaint and answer." RCW 59.18.380. "'A show cause hearing must be meaningful, as it is the first (and sometimes the only) step of the eviction process in which the tenant is able to participate.'" *Garrand*, 31 Wn. App. 2d at 438 (quoting *Faciszewski v. Brown*, 187 Wn.2d 308, 321, 386 P.3d 711 (2016)). The landlord bears the burden of proving the right to possession by a preponderance of the evidence. *Id.*

If it appears to the court that the landlord has the right to be restored possession of a property, the court may enter an order directing the issuance of a writ of restitution. RCW 59.18.380; *Garrand*, 31 Wn. App. 2d at 438. However, notwithstanding the issuance of a writ, "'if material factual issues exist, the court is required to enter an order directing the parties to proceed to trial on the complaint and answer.'" *Brewer v. Hill*, 25 Wn. App. 2d 844, 853, 525 P.3d 987 (2023) (quoting *Randy Reynolds & Assocs.*, 193 Wn.2d at 157); RCW 59.18.380. "If there are no issues of material fact regarding possession or any defenses raised by the defendant, the court need not set the matter for trial." *Brewer*, 25 Wn. App. 2d at 853. "'Reviewing courts will not reweigh the evidence or the credibility of witnesses on appeal.'" *Tedford v. Guy*, 13 Wn. App. 2d 1, 16, 462 P.3d 869 (2020) (quoting *State v. Living Essentials, LLC*, 8 Wn. App. 2d 1, 15, 436 P.3d 857, *review denied*, 193 Wn.2d 1040 (2019), *cert. denied*, 141 S. Ct. 234 (2020)).

B.   STANDARD OF REVIEW

Swan and Pacific NW Land dispute the proper standard of review. The parties identify a division split as to which standard should be applied to unlawful detainer show cause hearings. *Kiemle & Hagood Co. v. Daniels*, 26 Wn. App. 2d 199, 218-19, 528 P.3d 834 (2023) (stating that "it appears something close to de novo review should apply, at least when a tenant denies the landlord's grounds for eviction or raises an affirmative defense"); *cf. Tedford*, 13 Wn. App. 2d at 16 (applying an abuse of discretion standard). Swan urges this court to follow *Kiemle & Hagood Co.* and apply de novo review, while Pacific NW Land asserts that *Tedford*, and an abuse of discretion standard, is a "precedential holding of Division II." Br. of Resp't at 4.

We recently addressed this very issue in *Egbert*. 36 Wn. App. 2d at 25-26. The *Egbert* court reviewed the language of RCW 59.18.380 and questioned *Kiemle & Hagood Co.*'s creation of a de novo standard:

> We especially question *Kiemle*'s creation of a de novo standard of review for superior court decisions made in show cause hearings. Although *Kiemle* accurately recognizes that the legislature mirrored the language of a summary judgment standard in some portions of RCW 59.18.380, it ignores other aspects of the statute and the general attributes of the unlawful detainer statutory scheme. Indeed, this statutory scheme places unique responsibilities on the superior court at show cause hearings. For example, as noted above, the statute requires the superior court to "examine the parties and witnesses orally." RCW 59.18.380. Without question, no similar procedure occurs at a summary judgment hearing.

*Id.* at 27.

The *Egbert* court further noted that in unlawful detainer show cause hearings, the superior court must directly engage with the parties to assess the veracity of the claims "under a statutory scheme that values both expediency and efficiency while, at the same time, providing tenants a meaningful right to be heard." *Id.* (stating that "[o]ne might readily imagine that this assessment

could rise or fall on the subtleties of courtroom dynamics, such as body language, voice inflections, and other nonverbal cues related to credibility" and that courts do not assess credibility on motions for summary judgment). Accordingly, the *Egbert* court held that an abuse of discretion standard more closely matched the considerations in show cause hearings when reviewing a superior court's decision to issue a writ of restitution. *Id.* at 28 ("We do not decide whether an abuse of discretion standard is appropriate for *all* decisions made at a show cause hearing as this case presents only the singular question of what standard to apply to the first step under RCW 59.18.380—the superior court's decision regarding a writ of restitution." (emphasis in original)).

RCW 59.18.380 provides in part:

> The court shall examine the parties and witnesses orally to ascertain the merits of the complaint and answer, and *if it shall appear* that the plaintiff has the right to be restored to possession of the property, the court shall enter an order directing the issuance of a writ of restitution . . . restoring to the plaintiff possession of the property and *if it shall appear to the court* that there is no substantial issue of material fact of the right of the plaintiff to be granted other relief as prayed for in the complaint and provided for in this chapter, the court may enter an order and judgment granting so much of such relief as may be sustained by the proof, and the court may grant such other relief as may be prayed for in the plaintiff's complaint and provided for in this chapter, then the court shall enter an order denying any relief sought by the plaintiff for which the court has determined that the plaintiff has no right as a matter of law.

(Emphasis added.) The use of the phrase, "if it shall appear," in RCW 59.18.380 directs the superior court to make a decision based on the court's assessment of the merits of the complaint and answer—in other words, a discretionary decision. Thus, we agree with the reasoning in *Egbert* and hold that an abuse of discretion standard is proper in this context.

We review the denial of a motion for reconsideration for abuse of discretion. *Constr. Loan Servs. II, LLC v. ECM Riverside LLC*, 32 Wn. App. 2d 281, 291, 554 P.3d 1252 (2024). "A trial

13

court abuses its discretion when its decision is 'manifestly unreasonable or exercised on untenable grounds or for untenable reasons.'" *Id.* at 291 (internal quotation marks omitted) (quoting *Dynamic Res., Inc. v. Dep't of Revenue*, 21 Wn. App. 2d 814, 824, 508 P.3d 680 (2022)).

C.    RETALIATION DEFENSE TO UNLAWFUL DETAINER

Swan's retaliation defense is premised upon her belief that she was current on her rent, was not subject to any late fees, and thus other than her complaint to the Ridgefield Code Enforcement, Pacific NW Land had no cause to post the 14-Day Notice and attempt to evict her. Swan claims she was never notified of a rent increase. Thus, the fundamental issue is whether Pacific NW Land properly served Swan with the rent increase notice. Upon determination of whether the rent increase notice was properly served on Swan, we can then assess whether the superior court erred in entering an order for a writ of restitution based on Swan's purported failure to raise a rebuttable presumption of retaliation.

1.    Legal Principles

a.    Notice of rent increases

A landlord must give advance notice of rent increases to tenants. RCW 59.18.140. RCW 59.18.140 provides, in pertinent part:

> (3)(a) Except as provided in (b) and (c) of this subsection, a landlord shall provide a minimum of 90 days' prior written notice of an increase in the amount of rent to each affected tenant, and any increase in the amount of rent may not become effective prior to the completion of the term of the rental agreement.
> (b) If the rental agreement governs a subsidized tenancy where the amount of rent is based on the income of the tenant or circumstances specific to the subsidized household, a landlord shall provide a minimum of 30 days' prior written notice of an increase in the amount of rent to each affected tenant. An increase in the amount of rent may become effective upon completion of the term of the rental agreement or sooner upon mutual consent.

(c) For a tenant whose lease or rental agreement was entered into or renewed before May 7, 2025, and whose tenancy is for a specified time, if the lease or rental agreement has more than 60 days but less than 90 days left before the end of the specified time as of May 7, 2025, the landlord must provide written notice to the affected tenant a minimum of 60 days before the effective date of an increase in the amount of rent.

Additionally, notice of rent increases must be served in accordance with RCW 59.12.040.

RCW 59.18.720(1)(b)(ii).  Under former RCW 59.12.040 (2021),[5] the notice

shall be served either (1) by delivering a copy personally to the person entitled thereto; or (2) if he or she be absent from the premises unlawfully held, by leaving there a copy, with some person of suitable age and discretion, and sending a copy through the mail addressed to the person entitled thereto at his or her place of residence; or (3) if the person to be notified be a tenant, or an unlawful holder of premises, . . . or if a person of suitable age and discretion there cannot be found then by affixing a copy of the notice in a conspicuous place on the premises unlawfully held, and also delivering a copy to a person there residing, if such a person can be found, and also sending a copy through the mail addressed to the tenant, or unlawful occupant, at the place where the premises unlawfully held are situated. . . . Proof of any service under this section may be made by the affidavit of the person making the same in like manner and with like effect as the proof of service of summons in civil actions.  When a copy of notice is sent through the mail, as provided in this section, service shall be deemed complete when such copy is deposited in the United States mail in the county in which the property is situated properly addressed with postage prepaid: PROVIDED, HOWEVER, That when service is made by mail one additional day shall be allowed before the commencement of an action based upon such notice.

Proper statutory notice is a condition precedent to the commencement of an unlawful detainer action.  *Christensen v. Ellsworth*, 162 Wn.2d 365, 372, 173 P.3d 228 (2007).  "Strict compliance is required for time and manner requirements in unlawful detainer actions."  *Id.*  "A challenge to the adequacy of notice presents a mixed question of law and fact, reviewed de novo."  *Kiemle & Hagood Co.*, 26 Wn. App. 2d at 215.

---

[5]  RCW 59.12.040 was amended in 2025; thus, the former version of RCW 59.12.040 applies here. H.B. 1003, 69th Leg., Reg. Sess. (Wash. 2025); Former RCW 59.12.040.

b.       Rebuttable presumption of retaliation

Landlords are prohibited from taking retaliatory actions against a tenant if the tenant, in good faith, makes a complaint or report regarding the landlord's failure "to substantially comply with any code, statute, ordinance, or regulation governing the maintenance or operation of the premises, if such condition may endanger or impair the health or safety of the tenant."  RCW 59.18.240(1).  Retaliatory action may include increasing a tenant's rent or evicting a tenant.  RCW 59.18.240(2).

RCW 59.18.250 provides that if a landlord initiates an eviction action within 90 days of a tenant making a good faith complaint or report, a rebuttable presumption arises that the eviction action was an act of retaliation.  *Egbert*, 36 Wn. App. 2d at 28-29.  "But this rebuttable presumption of retaliation is conditional."  *Id.* at 29; *accord Tedford*, 13 Wn. App. 2d at 15.  RCW 59.18.250 further provides, in relevant part:

> [I]f at the time the landlord gives notice of termination of tenancy pursuant to chapter 59.12 RCW the tenant is in arrears in rent or in breach of any other lease or rental obligation, there is a rebuttable presumption affecting the burden of proof that the landlord's action is neither a reprisal nor retaliatory action against the tenant.

2.       Pacific NW Land Complied with Notice Requirements

As discussed above, Swan argues she never received notice of a rent increase.  Here, the record shows that Swan was a month-to-month tenant.[6]  The record also contains evidence that on

---

[6] Swan disputes that she had a month-to-month tenancy.  However, the record shows that after her 2021 lease agreement with Pacific NW Land expired, Swan never signed another fixed-term lease. It is not clear from the record on appeal if Swan ever *requested* another fixed-term lease, as she asserts only that Pacific NW Land never provided her with one.  Regardless, RCW 59.18.650(1)(d) states: "Upon the end date of the tenancy of a specified period, the tenancy becomes a month-to-month tenancy."  Thus, Swan had a month-to-month tenancy.

August 1, 2024, Pacific NW Land prepared a notice to Swan informing her that on October 1, 2024, her rent would increase from $1,950 per month to $2,495 per month.[7] The notice is dated August 1, 2024. Ball, Pacific NW Land's property manager, stated under oath that on August 1, 2024, she both posted a copy of the notice to Swan's front door and mailed a copy to Swan's address. As of August 1, 2024, Swan was $4,300 in arrears based on late fees and missed rental payments.

RCW 59.18.140 includes language addressing tenancies "entered into or renewed before May 7, 2025." RCW 59.18.140(3)(c). Specifically, RCW 59.18.140 states that "the landlord must provide written notice to the affected tenant a minimum of 60 days before the effective date of an increase in the amount of rent." RCW 59.18.140(3)(c). This 60-day timeframe aligns with the former version of RCW 59.18.140, which required a 60-day minimum notice for rent increases. Former RCW 59.18.140 (2019). Thus, here, Pacific NW Land needed to have given Swan notice at least 60 days in advance of her increase in rent. The record shows that Pacific NW Land issued the notice on August 1, 2024 of the rent increase to take effect on October 1, 2024; thus, the record shows that Pacific NW Land complied with the 60-day notice requirement. RCW 59.18.140(3)(c).

The next question is whether Pacific NW Land properly served Swan. Former RCW 59.12.040 provides three methods of service. *Hall v. Feigenbaum*, 178 Wn. App. 811, 820, 319

---

[7] Currently, a notice of a rent increase must be provided 90 days in advance; however, this is a recent change in the law effective beginning in May 2025. RCW 59.18.140; ENGROSSED H.B. 1217, 69th Leg., Reg. Sess. (Wash. 2025). Thus, the circumstances here predate the statutory change.

P.3d 61 ("The repeated use of the word 'or' in RCW 59.12.040 implies that (1), (2), and (3) are equal alternatives for notice under chapter 59.12 RCW."), *review denied*, 180 Wn.2d 1018 (2014).

The record shows that Pacific NW Land complied with option (3), which allows service "by affixing a copy of the notice in a conspicuous place on the premises" and "also sending a copy through the mail addressed to the tenant . . . at the place where the premises . . . held are situated." Former RCW 59.12.040.

Ball both declared and testified to both posting the notice on Swan's front door and serving Swan with the notice of rent increase by mail. Thus, Pacific NW Land established proof of service. Former RCW 59.12.040. Moreover, when a copy of the notice is sent through the mail, service is deemed complete "when such copy is deposited in the United States mail in the county in which the property is situated properly addressed with postage prepaid." Former RCW 59.12.040. Accordingly, if Swan had not been served with the copy of the notice posted to her door, Swan would have been served by August 2, 2024 by mail. Former RCW 59.12.040. Thus, the record shows Pacific NW Land strictly complied with the notice requirements of former RCW 59.12.040 and that Swan was properly served.

Swan argues it was possible that she was mailed a copy of the rent increase notice, but that it had been stolen from her mailbox in the course of mail thefts that occurred at her complex. However, the record shows that the mail thefts did not occur until early December 2024. As discussed above, Pacific NW Land mailed the notice in August 2024. And even if Swan had somehow not received notice through Pacific NW Land's mailing or posting in August, Swan would have been notified by October 2024 through her rental payment email reminders, which stated the amount of rent due, and would have alerted Swan to at least clarify her rent payment

18

with Pacific NW Land or rectify the situation. The record shows that Swan was receiving those payment reminders via email, her preferred method of communication. Nevertheless, former RCW 59.12.040 contains no requirement that a landlord must prove *actual* notice or receipt on the part of the tenant. Indeed, consistent with the language found in former RCW 59.12.040, Washington courts emphasize delivery methods and timing requirements as the prerequisites to valid notice, not whether a tenant actually received the notice. *See Hall*, 178 Wn. App. at 822.

Because the record shows that Pacific NW Land strictly complied with notice requirements regarding the rent increase, Swan was properly served with notice of the rent increase.

3.  Swan Fails to Show Retaliatory Action

Swan argues she established a rebuttable presumption of retaliation on the part of Pacific NW Land. Specifically, Swan asserts that Pacific NW Land issued the 14-Day Notice 23 days after she sent a complaint to the Ridgefield Code Enforcement, in violation of RCW 59.18.250.

The record shows that Pacific NW Land issued the 14-Day Notice about three weeks after Swan complained to the Ridgefield Code Enforcement about the smoke detectors. Swan is correct that under RCW 59.18.250, the timing of Pacific NW Land's 14-Day Notice could give rise to a rebuttable presumption of retaliation. *See generally* RCW 59.18.250. However, RCW 59.18.250 also provides that

> if at the time the landlord gives notice of termination of tenancy pursuant to chapter 59.12 RCW *the tenant is in arrears in rent* or in breach of any other lease or rental obligation, there is a rebuttable presumption affecting the burden of proof that the landlord's action is neither a reprisal nor retaliatory action against the tenant.

(Emphasis added.)

19

Here, and for the reasons discussed in the preceding section, the record shows that Swan was in arrears in her rent based on her consistent late payments or missed rent payments *prior to the notice of a rent increase* and her partial rent payments after the rent increase from October through December 2024 and January 2025. Furthermore, Ball testified that Pacific NW Land's decision to issue the 14-Day Notice had nothing to do with Swan's smoke detector complaint. Accordingly, under RCW 59.18.250, there is a presumption that Pacific NW Land's conduct was not a "retaliatory action" and the burden shifted back to Swan to show retaliation. *Tedford*, 13 Wn. App. 2d at 14.

Swan fails to identify any additional evidence suggesting Pacific NW Land's action was retaliatory. Moreover, "'[r]eviewing courts will not reweigh the evidence or the credibility of witnesses on appeal.'" *Id.* at 16 (quoting *Living Essentials, LLC*, 8 Wn. App. 2d at 15). Thus, Swan fails to show a genuine issue of material fact; the superior court did not err when it entered an order for the writ of restitution and determined no trial was necessary. Additionally, because the superior court did not err when it entered its order, the superior court did not abuse its discretion when it denied Swan's motion for reconsideration.[8]

## CONCLUSION

We affirm the superior court.

---

[8] Swan's motion for reconsideration did not provide the grounds upon which she sought reconsideration. *See* CR 59. Instead, Swan's motion re-stated the same facts she presented in declarations and at the show cause hearing. The record shows that when the superior court denied Swan's motion for reconsideration, the superior court had analyzed Swan's motion under each ground of CR 59(a) and found that none applied.

No. 61250-0-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Price, A.C.J.

Che, J.